UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KATHERINE M. BYRNE,<br><br>    Plaintiff,<br><br>    v.<br><br>WASHINGTON STATE UNIVERSITY,<br><br>    Defendant. | NO.  CV-03-246-RHW<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, IN PART; DENYING PLAINTIFF'S MOTION FOR REMEDIES FOR DEFENDANT'S DESTRUCTION OF EVIDENCE AND VIOLATION OF COURT ORDER** |

A pretrial hearing was held on August 30, 2007, in Spokane, Washington. Plaintiff was represented by Scott Blankenship. Defendant was represented by Amy Clemmons and Jarold Cartwright. Before the Court were Defendant's Motion for Summary Judgment (Ct. Rec. 89) and Plaintiff's Motion for Remedies for Defendant's Destruction of Evidence and Violation of Court Order (Ct. Rec. 93).

## BACKGROUND

Plaintiff began her career at Washington State University in 1992, as an Assistant Professor at the College of Veterinary Microbiology and Pathology. In 1996, she moved to the College of Agriculture and Home Economics (CAHE); her tenure clock was restarted and she became eligible for tenure in 2002-03.

In 2000, Plaintiff wrote a memo to Dean Zuiches, Dean of the CAHE. In her memo, she criticized certain actions and decisions made by Raymond Wright,

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, IN PART; DENYING PLAINTIFF'S MOTION FOR REMEDIES FOR DEFENDANT'S DESTRUCTION OF EVIDENCE AND VIOLATION OF COURT ORDER ~ 1**

Chair of the Animal Sciences Department, and suggested that she was being discriminated against on account of her gender. In the Fall of 2001, Plaintiff submitted her application for promotion and tenure. As part of the tenure process, the faculty in the Animal Science Department voted on whether to grant or deny Plaintiff tenure. The Department voting results were as follows: 12 to grant; 5 to deny; 2 abstentions. Each faculty member wrote a narrative justifying their vote. Chair Wright wrote a summary of the results of the Department's views on Plaintiff's tenure application.

Chair Wright's summary was forwarded to the Promotion and Tenure Advisory Committee for the CAHE. The Committee reviewed Plaintiff's application and dossier and each committee member cast a ballot to either deny or grant tenure. The results were as follows: 7 voted to deny tenure and 1 voted to promote and grant tenure.[1]

On October 31, 2001, Dean Zuiches wrote an analysis and recommendation. It was his assessment that Plaintiff's record was "not adequate for promotion and tenure at Washington State University." He concluded that the College should recommend denial of promotion and tenure based on the record of publications, lack of contributions to graduate education, and limited contributions to the undergraduate program. Plaintiff's tenure application and Dean Zuiches' recommendation were forwarded to Robert C. Bates, Provost and Academic Vice President at Washington State University.

On February 27, 2002, Provost Bates notified Plaintiff by letter that she would not be awarded tenure. The following is an excerpt from Bates' letter:

> I regret to notify you that following careful consideration of your qualification for tenure, and discussions with your Dean the decision

---

[1] The members submitted their votes on 3x5 cards. The 3x5 cards were subsequently destroyed by the Deans' office. According to Defendant, it destroyed these cards pursuant to a long-standing WSU policy.

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, IN PART; DENYING PLAINTIFF'S MOTION FOR REMEDIES FOR DEFENDANT'S DESTRUCTION OF EVIDENCE AND VIOLATION OF COURT ORDER ~ 2**

has been made that you will not be awarded tenure. Under the terms of the *Faculty Manual*, your appointment will terminate at the end of next annual year, June 30, 2003.

(Ct. Rec. 121-3).

Plaintiff appealed the denial of tenure to the Faculty Status Committee.[2] The Faculty Status Committee issued a Report in May, 2002. It made the following findings:

1. Although the overall vote of the Department of Animal Sciences favored the candidate, the Chair's summary that went forward to the college was quite biased. It found the Chair ignored the positive comments and elaborated upon the negative comments coming from four ballots. His analysis was quite negative and very different in tone from the annual reviews.

2. The FSC found evidence of improper procedure, inadequate consideration, and seemingly unethical professional behavior that impacted this case negatively. Specifically, it found that during the time prior to consideration for tenure, Plaintiff never received a written summary of the progress towards tenure from the Chair that both reflected the views of the entire tenured faculty and outlines possible deficiencies and their implications in terms of tenure. The FSC found that this failure to provide such feed back was a serious breach of administrative conduct and compromised her ability to address perceived deficiencies and to prepare a successful tenure package.

3. The FSC was disturbed about the incongruities of the annual review ratings and the tenure outcomes. Her annual reviews were very positive and there was nothing to indicate that she would be denied tenure. Both Chair Wright and Dean Zuiches indicated that her progress towards tenure was satisfactory.

4. The FSC noted unethical professional behavior in that a faculty member, whose daughter was completing her master's project under the direction of Plaintiff at the time of the vote, voted negatively. They were concerned about nepotism. There was some strong lobbying against Plaintiff at the time of tenure balloting. The Chair was indiscrete with confidential personnel matters. Prejudicial evidence was introduced late into the deliberations, without the ability to rebut or defend.

Ultimately the FSC concluded:

Plaintiff was led believe that she was making good progress

---

[2]The functions of the Faculty Status Committee at WSU include the conciliation and adjudication of disputes within the faculty and between members of the faculty and the administration. A faculty member who has been denied tenure may petition the Faculty Status Committee to review the decision. (Ct. Rec. 128-2, Attach. 13).

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, IN PART; DENYING PLAINTIFF'S MOTION FOR REMEDIES FOR DEFENDANT'S DESTRUCTION OF EVIDENCE AND VIOLATION OF COURT ORDER ~ 3**

> towards tenure. However, because of blatant disregard for proper procedures she was not properly alerted to concerns about her progress toward tenure and promotion and given adequate opportunity to address these concerns. Therefore, the Faculty Status Committee recommends the tenure denial decision be set aside and that tenure and promotion to associate professor be granted as recommended by the majority of the Animal Science faculty.

(Ct. Rec. 92-11).

On June 13, 2002, President Rawlins wrote the following letter addressed to Dr. Byrne:

> Dear Dr. Byrne:
>
> I have reviewed the Faculty Status Committee's report on your appeal of tenure denial and I conclude that the failure to provide you with accurate annual feedback on progress towards tenure is a substantive procedural err. Therefore, as recommended by the Faculty Status Committee, I am setting aside the decision to deny tenure. However, it is not clear to me that granting tenure is the appropriate step at this time. Personnel in the College of Agriculture and Home Economics have expressed legitimate performance concerns that should be addressed before tenure may be awarded. I am therefore returning this matter to the Provost with the direction that he, after consulting with CAHE personnel and you, determine what action should be taken regarding your tenure status.

(Ct. Rec. 121-7).

Defendant attempted to contact Plaintiff in June, 2002 by placing this letter in her WSU mail box, but she had already left Pullman (Ct. Rec. 92-19).[3] She never contacted the University. On July 8, 2002, Plaintiff submitted the following letter:

> Effective July 22, 2002, I am resigning my position at WSU. I will be on terminal leave until that date and this letter will serve as my two week notice.

(Ct. Rec. 92-14).

Plaintiff alleges that she was denied tenure by Defendant Washington State University because she was female and because she had filed a gender-discrimination complaint against the Chair of her department. She brought suit in

---

[3]In her declaration, she reports that "it was about June 20, 2002 that I received the President's final decision rejecting my appeal." Plaintiff's Declaration ¶ 29.

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, IN PART; DENYING PLAINTIFF'S MOTION FOR REMEDIES FOR DEFENDANT'S DESTRUCTION OF EVIDENCE AND VIOLATION OF COURT ORDER ~ 4**

federal court asserting the following claims: (1) Defendants engaged in unlawful employment practices, in violation of the Washington Law Against Discrimination and Title VII; (2) Defendants subjected Plaintiff to a hostile and offensive work environment due to sex and gender, including discriminatorily and retaliatorily denying her a fair and unbiased tenure process, deliberately making her working conditions intolerable; (3) Plaintiff was retaliated against and suffered adverse employment actions as a result of her protected activity; (4) Plaintiff was intentionally discriminated against in employment on account of her sex and gender; and (5) Plaintiff was constructively discharged (Ct. Rec. 38).

## DISCUSSION

### I. Defendant's Motion for Summary Judgment

Defendant moves for summary judgment on a narrow issue with respect to Plaintiff's retaliation and discrimination claim. Defendant asks this Court to find that Plaintiff cannot show that Defendant took any adverse employment action against her, thereby negating Plaintiff's *prima facie* case of retaliation and discrimination. Defendant also argues that Plaintiff does not allege any conduct of a sexual nature to support her hostile work environment claim, and she cannot provide any evidence of sexual harassment to support her constructive discharge claim.

#### A. Standard of Review

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). There is no genuine issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict in that party's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). The moving party has the initial burden of

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, IN PART; DENYING PLAINTIFF'S MOTION FOR REMEDIES FOR DEFENDANT'S DESTRUCTION OF EVIDENCE AND VIOLATION OF COURT ORDER ~ 5**

showing the absence of a genuine issue of fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party meets it initial burden, the non-moving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial. *Id.*; *Anderson*, 477 U.S. at 248.

In addition to showing that there are no questions of material fact, the moving party must also show that it is entitled to judgment as a matter of law. *Smith v. Univ. of Wash. Law Sch.*, 233 F.3d 1188, 1193 (9th Cir. 2000). "The moving party is entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of a claim on which the non-moving party has the burden of proof." *Celotex*, 477 U.S. at 323.

When considering a motion for summary judgment, a court may neither weigh the evidence nor assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

### B.    Adverse Employment Action

Plaintiff is alleging a retaliation claim and an unlawful discrimination claim under Title VII. Both require a showing of adverse employment action. In order to prove a retaliation claim under Title VII, Plaintiff must show (1) involvement in a protected activity; (2) an adverse employment action and (3) a causal link between the plaintiff's protected activity and the adverse employment action. *Poland v. Chertoff*, 2007 WL 2069651, at *4 (9th Cir. July 20, 2007). In a disparate treatment claim, Plaintiff must offer direct or indirect evidence of discriminatory intent. Under the *McDonnell Douglas* framework, unlawful discrimination is presumed if the plaintiff can show that (1) she belonged to a protected class; (2) she was performing according to her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) other employees with qualifications similar to her own were treated more favorably. *Reeves v.*

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, IN PART; DENYING PLAINTIFF'S MOTION FOR REMEDIES FOR DEFENDANT'S DESTRUCTION OF EVIDENCE AND VIOLATION OF COURT ORDER ~ 6**

*Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000).

Defendant asserts that Plaintiff cannot establish a *prima facie* case of retaliation and unlawful discrimination.[4] Defendant asserts that Plaintiff cannot show that it took any adverse employment action against her.[5] Specifically, Defendant argues that because the tenure process was still in the review stage when Plaintiff submitted her termination notice, Plaintiff cannot show a final adverse employment action. Because President Rawlins did not deny Plaintiff tenure and merely referred the decision to the Provost to address performance issues, Defendant argues the tenure process was not complete.

In *Burlington N. & Santa Fe Ry. Co. v. White*, the Supreme Court held that Title VII's substantive provision (anti-discrimination) and its anti-retaliation provision are not coterminous. 126 S.Ct. 2405, 2414 (2006). The scope of the anti-retaliation provision extends beyond workplace-related or employment-related retaliatory acts and harms. *Id.* In the retaliation context, a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which would mean that "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 2407 (citation omitted). "Petty slights, minor annoyances, and simple lack of good manners," or personality conflicts or snubbing by supervisors and co-workers are not materially adverse actions. *Id.* at 2415.

As the *White* Court explained:

---

[4]For purposes of this summary judgment motion, Defendant assumes that the conduct of Ray Wright and Dean Zuiches in the tenure process was motivated by retaliation and discrimination (Ct. Rec. 145).

[5]In its summary judgment motion, Defendant is only arguing that Plaintiff cannot establish one prong of her retaliation and discrimination claim, that is, an adverse employment action. Thus, the Court does not pass judgment on whether Plaintiff can establish the remaining elements of each claim; rather it will presume that Plaintiff has established these elements. See footnote 6.

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, IN PART; DENYING PLAINTIFF'S MOTION FOR REMEDIES FOR DEFENDANT'S DESTRUCTION OF EVIDENCE AND VIOLATION OF COURT ORDER ~ 7**

> The anti-retaliation provision seeks to secure that primary objective by preventing an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees. The substantive provision seeks to prevent injury to individuals based on who they are, *i.e.*, their status. The anti-retaliation provision seeks to prevent harm to individuals based on what they do, *i.e.*, their conduct.

*Id.* at 2412.

Notably, the *White* Court rejected the notion that a plaintiff would have to show an "ultimate employment decision" in order to support a retaliation claim. *Id.* at 2414 ("We therefore reject the standards applied in the Courts of Appeals that have treated the anti-retaliation provision as forbidding the same conduct prohibited by the anti-discrimination provision and that have limited actionable retaliation to so-called 'ultimate employment decisions.'"). Under *White*, then, a separate and different analysis must be conducted to determine whether an adverse employment decision occurred to support a Title VII retaliation claim and to support a Title VII discrimination claim.

### (1) Retaliation Claim

Section 704(a) sets forth Title VII's anti-retaliation provision as follows:

> "It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

42 U.S.C. § 2000e-3(a)

In the retaliation context, an adverse employment action is "any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected activity." *Poland,* 2007 WL 2069651, at *4.

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, IN PART; DENYING PLAINTIFF'S MOTION FOR REMEDIES FOR DEFENDANT'S DESTRUCTION OF EVIDENCE AND VIOLATION OF COURT ORDER ~ 8**

In determining whether a materially adverse action occurred, the Court must consider the unique nature of the tenure process. *White*, 126 S.Ct. at 2415 ("[T]he significance of any given act of retaliation will often depend on the particular circumstances."). In *Okruhlik v. Univ. of Ark.*, the Eighth Circuit made the following observations:

> We are mindful of the singular nature of academic decision-making, and we lack the expertise to evaluate tenure decisions or to pass on the merits of a candidate's scholarship. We have said that "[w]hile Title VII unquestionably applies to tenure decisions, judicial review of such decisions is limited to whether the tenure decision was based on a prohibited factor." The Supreme Court has made it clear that "[w]hen judges are asked to review the substance of a genuinely academic decision, ... they should show great respect for the faculty's professional judgment." *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 225 (1985) (footnote omitted); *see also Board of Curators, Univ. of Mo. v. Horowitz*, 435 U.S. 78, 90 (1978).
> 
> . . .
> 
> [I]it is appropriate for us to defer to campus policy in determining when an official decision on tenure has been made, particularly in light of the many intermediate recommendations involved in the process. We do not want to turn the tenure process into potentially endless litigation over each intermediate step, and believe that a university should have the opportunity to correct errors through its complete internal appeals process that precedes its final decision. "[W]here the tenure decision was following the chain of appeal, each decision along the way is not actionable. Only the final decision is the ultimate act."

395 F.3d 872, 879 (8th Cir. 2005).

Applying this lens, the Court finds that a reasonable jury could find that being the recipient of a negative summary and a negative recommendation, as well as the receipt of the letter from Provost Bates were adverse employment decisions that could reasonably deter others from engaging in protected activity. A reasonable person facing discriminatory conduct could decide that it would not be worth making a complaint if the net result would be an initial denial letter, and then having to proceed with the appeals process. Receiving a initial tenure denial letter may carry with it both the stigma of failure, possibly significant emotional distress, and could negatively effect a person's chances for future advancement. If the negative evaluation or denial letter was received in retaliation for making a

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, IN PART; DENYING PLAINTIFF'S MOTION FOR REMEDIES FOR DEFENDANT'S DESTRUCTION OF EVIDENCE AND VIOLATION OF COURT ORDER ~ 9**

complaint regarding discrimination, it could reasonably deter others from making similar complaints. Accordingly, summary judgment with respect to Plaintiff's retaliation claims is not appropriate.

### (2) Disparate Treatment Claim

Section 703(a) holds that it shall be unlawful employment practice for an employer–

> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a).

In the discrimination context, the Ninth Circuit defines "adverse employment action" broadly. *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000). Even so, the Ninth Circuit has held that where a negative evaluation or performance review could have been changed on appeal, it is not sufficiently final to constitute an adverse employment action. *Brooks v. City of San Mateo*, 229 F.3d 917, 930 (9th Cir. 2000). As the Ninth Circuit observed, "[t]o rule otherwise would be to encourage litigation before the employer has an opportunity to correct through internal grievance procedures any wrong it may have committed." *Id.*

Given the unique nature of the tenure process, a jury could find that an adverse employment decision was made when Defendant did not grant Plaintiff tenure.[6] The letter written by President Rawlins notifying Plaintiff that he was

---

[6] In her response, Plaintiff spends a great deal of effort discussing the procedural anomalies that occurred during her tenure process. It is important to remember that any violations of Plaintiff's due process rights would not support a discrimination or retaliation claim, unless Plaintiff was able to show that these occurred on account of her gender. Plaintiff has not argued that the Promotion and

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, IN PART; DENYING PLAINTIFF'S MOTION FOR REMEDIES FOR DEFENDANT'S DESTRUCTION OF EVIDENCE AND VIOLATION OF COURT ORDER ~ 10**

withdrawing the denial, but was not granting her tenure, could be a final adverse employment decision for the tenure year in question. It represented a culmination of tenure process that began in 2001 and ended when the tenure decision was withdrawn.

The following is an exert from WSU's description of the typical process the Faculty Status Committee might engage in in reviewing a decision to deny tenure:

> A final report of the findings of the [FSC's] investigation is prepared for the President of the university . . .
> The President reviews the findings of the Faculty Status Committee and responds within 30 days of receiving the report. If the President should decide that the decision be set aside, it becomes important to understand what that typically means. Setting the decision to deny tenure aside does NOT mean granting tenure. It means that the appellant may continue in his or her current position while the entire process to decide on tenure is repeated, with the procedural violations corrected and with adequate consideration being given. Thus, the candidate is typically asked to prepare another packet, with updated materials, new ballots are prepared, and new outside letters of recommendation are sought.

(Ct. Rec. 128-2, Attach. 13) (emphasis in original).

The letter from President Rawlins made it clear that Plaintiff was not receiving tenure. It also made it clear that the denial of tenure was being withdrawn. A reasonable jury could find that this was a final adverse employment decision because under the typical scenario, the withdrawal of the denial of tenure would require Plaintiff to start the tenure process over again the next year. This was not the outcome that she had hoped to achieve, which was to become a tenured faculty member for the 2002-03 academic year. The fact that there was no indication that she would be receiving tenure by the 2002-03 academic year means a final adverse employment decision may have been taken.

The tenure process cannot be equated with an annual performance

---

Tenure Advisory Committee acted with any discriminatory motive, nor would the record support such a conclusion. Likewise, Plaintiff has not alleged that President Rawlins has acted with any discriminatory animus in his decision to not grant tenure. For purposes of this summary judgment motion, however, the focus is not on causation, but rather whether an adverse employment decision was made.

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, IN PART; DENYING PLAINTIFF'S MOTION FOR REMEDIES FOR DEFENDANT'S DESTRUCTION OF EVIDENCE AND VIOLATION OF COURT ORDER ~ 11**

evaluation. The tenure process is an evaluation of over five years of job performance. Obtaining tenure represents the pinnacle of one's academic career, resulting in increased pay and prestige. It is also necessary for continuing employment with the university. While the withdrawal of denial of tenure would have allowed Plaintiff to continue her employment at WSU, her continued employment would have been under a cloud of having been once denied tenure, and would have been at a reduced-rate of pay. A reasonable jury could find that the denial of tenure, culminating in the withdrawal of tenure, but not the awarding of tenure, was an adverse employment action.

The Court must draw all reasonable inferences from the evidence in the light most favorable to Plaintiff, the non-moving party. In this case, a reasonable jury could find that the letter written by President Rawlins was an adverse employment decision. Accordingly, summary judgment on Plaintiff's discrimination claims is not appropriate.

### C. Hostile Work Environment Claim

Defendants argue that Plaintiff fails to identify any conduct of a sexual nature to support a hostile work environment claim. In order to prove a hostile work environment claim, Plaintiff must show (1) the existence of a hostile work environment to which the plaintiff was subjected, and (2) that the employer is liable for the harassment that caused the hostile environment to exist. *Freitag v. Ayers*, 468 F.3d 528, 539 (9th Cir. 2006). To establish the existence of a hostile work environment, "a plaintiff must prove that (1) she was subjected to verbal or physical conduct of a sexual nature, (2) this conduct was unwelcome, and (3) this conduct was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment." *Id.*

Plaintiff did not respond to Defendant's argument. There is nothing in the record to indicate that Plaintiff was subjected to verbal or physical conduct of a

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, IN PART; DENYING PLAINTIFF'S MOTION FOR REMEDIES FOR DEFENDANT'S DESTRUCTION OF EVIDENCE AND VIOLATION OF COURT ORDER ~ 12**

sexual nature, or that any such conduct was sufficiently severe or pervasive to alter the conditions of her employment. As such, summary judgment with respect to Plaintiff's hostile work environment claim is granted.

### D. Constructive Discharge Claim

Defendants argue that Plaintiff has not presented any evidence of sexual harassment to make her working conditions intolerable. In order to survive summary judgment on a constructive discharge claim, a plaintiff "must show there are triable issues of fact as to whether 'a reasonable person in [his] position would have felt that [he] was forced to quit because of intolerable and discriminatory working conditions.'" *Hardage v. CBS Broad., Inc.*, 427 F.3d 1177, 1184 s(9th Cir. 2005). For the purpose of this motion, the Court must assume that there was discrimination and retaliation in the tenure process that were part of the working conditions of the plaintiff. Whether such conditions were so intolerable as to justify a reasonable employee's decision to resign is normally a factual question for the jury. *Wallace v. City of San Diego*, 479 F.3d 616, 626 (9th Cir. 2007). The Court finds that a reasonable jury could find that factors existed that could have justified Plaintiff's leaving.

## II. Plaintiff's Motion for Remedies for Defendant's Destruction of Evidence and Violation of Court Order

Plaintiff argues that Defendants destroyed documents that are relevant to this action and did so after they were put on notice regarding a potential lawsuit. Plaintiff asks the Court to strike Defendant's answer, or in the alternative, instruct the jury regarding Defendant's spoilation of evidence, and issue monetary sanctions.

Plaintiff is asking this Court, in essence, to enter default judgment against Defendant. Where it is determined that counsel or a party has acted willfully or in bad faith in failing to comply with the rules of discovery or with Court orders

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, IN PART; DENYING PLAINTIFF'S MOTION FOR REMEDIES FOR DEFENDANT'S DESTRUCTION OF EVIDENCE AND VIOLATION OF COURT ORDER ~ 13**

1  enforcing the rules or in flagrant disregard of those rules or orders, it is within the
2  discretion of the Court to dismiss the action, render judgment by default against the
3  party responsible for noncompliance, enter an order refusing to allow the
4  disobedient party to support or oppose designated claims or defenses, or prohibit
5  the disobedient party from introducing designated matters in evidence. Fed. R.
6  Civ. P. 37(b). The Court will impose a default judgment as a sanction when a
7  party's violations are due to the "willfulness, bad faith, or fault" of the party, and
8  where lesser sanctions are considered by the Court to be inadequate. *Hyde &
9  Drath v. Baker*, 24 F.3d 1162, 1166 (9th Cir. 1994) (*citing Fjelstad v. Am. Honda
10 Motor Co.*, 762 F.2d 1334, 1341 (9th Cir. 1985)); *United Artists Corp. v. La Cage
11 Aux Folles, Inc.*, 771 F.2d 1265, 1270 (9th Cir. 1985). "Disobedient conduct not
12 shown to be outside the control of the litigant is sufficient to demonstrate
13 willfulness, bad faith, or fault." *Hyde & Drath*, 24 F.3d at 1167.

14 Before entering default judgment, the district court must consider "(1) the
15 public's interest in expeditious resolution of litigation; (2) the court's need to
16 manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the
17 public policy favoring disposition of cases on their merits; and (5) the availability
18 of less drastic sanctions." *Id.* at 1166. "The first two of these factors favor the
19 imposition of sanctions in most cases, while the fourth cuts against a default or
20 dismissal sanction. Thus the key factors are prejudice and availability of lesser
21 sanctions." *Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir. 1990).

22 Here, the record does not support the Court entering default judgment
23 against Defendant. There is nothing in the record to suggest that Defendant
24 deliberately acted inconsistent with its retention policies. In fact, there is evidence
25 that Defendant acted consistent with such policies. Also, there is nothing in the
26 record to show how Plaintiff was prejudiced by not having the ballots and
27 evaluations. As Defendant points out, Plaintiff could have asked the members of

28 **ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, IN PART; DENYING PLAINTIFF'S MOTION FOR REMEDIES FOR DEFENDANT'S DESTRUCTION OF EVIDENCE AND VIOLATION OF COURT ORDER ~ 14**

the Committee how they voted and why. Plaintiff speculates that since five years have passed, the members will not remember what happened and why. The Court will not award default judgment based on speculation.

Plaintiff also suggests that the erasure of Dean Zuiches' hard drive was made in bad faith and should result in default judgment. Again, Plaintiff has not shown how she was prejudiced by the erasures. Defendant reports that a backup of the hard drive existed and was produced.

Plaintiff has not shown that Defendant acted in bad faith, nor has she established that she was prejudiced by the alleged destruction of evidence. The public's interest in expeditious resolution of litigation, and the timing of Plaintiff's motion weigh in favor of denying Plaintiff's motion.

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendant's Motion for Summary Judgment (Ct. Rec. 89) is **DENIED**, in part. The Court **denies** Defendant's motion with respect to Plaintiff's retaliation and unlawful discrimination claims, and constructive discharge claim, and **grants** Defendant's motion with respect to Plaintiff's hostile work environment claims.

2. Plaintiff's Motion for Remedies for Defendant's Destruction of Evidence and Violation of Court Order (Ct. Rec. 93) is **DENIED**.

**IT IS SO ORDERED.** The District Court Executive is hereby directed to enter this Order and to furnish copies to counsel.

**DATED** this 5th day of September, 2007.

*s/Robert H. Whaley*

ROBERT H. WHALEY
Chief United States District Judge

Q:\CIVIL\2003\Byrne\sj.ord.wpd

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, IN PART; DENYING PLAINTIFF'S MOTION FOR REMEDIES FOR DEFENDANT'S DESTRUCTION OF EVIDENCE AND VIOLATION OF COURT ORDER ~ 15**